IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANUEL BAEZ, | No. 4:21-CV-00728 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| C.O. HENRY, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

SEPTEMBER 14, 2023

Plaintiff, Manuel Baez, a Pennsylvania state inmate, currently confined in the Forest State Correctional Institution, Marienville, Pennsylvania ("SCI-Forest"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.[1] The action proceeds *via* an amended complaint.[2] Plaintiff complains of an event which occurred at his prior place of confinement, the Rockview State Correctional Institution, Bellefonte, Pennsylvania, ("SCI-Rockview").[3] The named Defendants are the following SCI-Rockview employees: Unit Manager Knapp, C.O. Henry and C.O. Conklin.[4]

Baez alleges that on November 11, 2020, Defendant, C.O. Conklin "was watching another prisoner clean the G-Unit Maximum Security block where

---

[1]  Doc. 1.
[2]  Doc. 33.
[3]  *Id.*
[4]  *Id.*

[Plaintiff] was being threaten[ed] by the prisoner who was cleaning the unit right in front of C.O. Conklin, which C.O. Conklin encouraged by laughing and mockery of [Plaintiffs] speech impediment."[5] Plaintiff claims that he told C.O. Conklin to "shut up" and "C.O. Conklin said something to the other prisoner that [Plaintiff] wasn't able to hear, body language show both of their actions."[6]

On November 15, 2020, Plaintiff claims that C.O. Henry "stag[ed] a fight" when he "looked at [Plaintiff's] door tag which was (Phase 3m) that stands for maximum security inmate that must be handcuffed and shackled outside of his cell at all times" and "C.O. Henry opened [Plaintiff's] door so [Plaintiff] could clean [his] cell and he did not cuff [Plaintiff] up."[7] Once outside of his cell, Plaintiff claims that "the prisoner who had been threatening [him] was out there" and "as [Plaintiff] was sweeping [his] cell floor, [he] heard someone shout," causing Plaintiff to "drop [his] brook and rush to [his] door where the prisoner came towards [him[ with a broom held like a baseball bat."[8] Plaintiff states that "out of fear, [he] began to try to protect [himself]" and "was hit with the wooden broom stick so hard the impact ripped the skin under [his] right eye, which immediately became swollen, bloody and black and blue."[9] To break up the fight, C.O. Henry "tackled [Plaintiff] to the floor without any resistance" and C.O. Henry "put

---

[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   *Id.*
[9]   *Id.*

[Plaintiff in a professional U.F.C. chokehold," going "as far as wrapping his legs around [Plaintiff's] body to bend [his] back backwards" exposing the "neck to completely stop air from passing the trachea tubes," and "chok[ing] [Plaintiff] until [he] became unconscious and unable to move."[10]  Once Plaintiff woke, he had "blurry vision" and "became verbally disrespectful and tried to call for help."[11]  C.O. Henry "then rammed one of his knees to the back of [his] neck to stop [his] verbal disrespectful words and calls for help."[12]  Plaintiff was so afraid that he "screamed Black Lives Matter, just in case [he] would of die, justice would establish itself by the outcome, because all lives matter, even Latinos."[13]

Plaintiff filed the instant action seeking compensatory and punitive damages, as well as injunctive relief,[14] for Defendants' alleged failure to protect him from an assault by another inmate, and the use of excessive force, in violation of his Eighth Amendment rights.[15]

---

[10]  *Id.*
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*
[14]  Any request for injunctive relief is moot as Plaintiff has since been transferred from SCI-Rockview to SCI-Forest. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993); *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981).
[15]  Doc. 33.  By Memorandum and Order dated April 11, 2022, this Court dismissed Plaintiff's Fourteenth Amendment Due Process claims in favor of the more-specific provision of the Eighth Amendment.  Docs. 48, 49.

Presently pending are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[16] For the following reasons, the Court will grant Defendants' Rule 56 motion and deny Plaintiff's motion.

## I.  STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[17] A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[18] A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[19] The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.[20] When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[21] Initially, the moving party must show the absence of a genuine issue concerning any material fact.[22] Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly

---

[16] Docs. 73, 81.
[17] Fed. R. Civ. P. 56(c).
[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[19] *Id.* at 250.
[20] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[21] *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

supported motion for summary judgment."[23] "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[24] "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[25]

Courts may resolve cross-motions for summary judgment concurrently.[26] When doing so, a court is bound to view the evidence in the light most favorable to the nonmovant with respect to each motion.[27] If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial'."[28] Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[29]

---

[23] *Anderson*, 477 U.S. at 257.
[24] *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).
[25] Fed. R. Civ. P. 56(e)(2)-(3).
[26] *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008); 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE §2720 (3d ed. 2015).
[27] *See Lawrence*, 527 F.3d at 310 (citation omitted).
[28] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).
[29] *Celotex Corp.*, 477 U.S. at 322.

## II. STATEMENT OF MATERIAL FACTS

On November 15, 2020, at approximately 12:33 p.m., CO1 Henry and CO1 Ace were standing in the hallway while supervising cell cleaning on G Block A Range at cells A1008 and A 1009.[30] Plaintiff was sweeping his cell.[31] Inmate Laprad was sweeping the hallway area outside Plaintiff's cell.[32] As Inmate Laprad passed Plaintiff's cell, Plaintiff exited his cell and attacked Inmate Laprad.[33] Plaintiff struck Inmate Laprad with closed fists to the head and body area.[34] As Inmate Laprad attempted to retreat to avoid the assault, Plaintiff continued attacking him and the inmates became involved in a physical altercation.[35]

C.O. Henry and non-party C.O. Ace gave direct orders to the inmates to stop fighting.[36] Both inmates refused to comply with the orders.[37] Both C.O. Henry and C.O. Ace then ran to separate the inmates.[38] C.O. Henry wrapped his arms around Plaintiff's waist and placed him on the ground to gain control.[39] Plaintiff continued to resist and spit at C.O. Henry and toward Inmate Laprad.[40] C.O. Henry placed Plaintiff in a rear chokehold to gain control until assistance arrived.[41]

---

[30] Docs. 82-1, 82-2, Videos 1 and 2; Docs. 82-4, 82-5, Officers' Statements.
[31] Id.
[32] Id.
[33] Id.
[34] Id.
[35] Id.
[36] Docs. 82-4, 82-5, Officers' Statements.
[37] Id.
[38] Docs. 82-1, 82-2, Videos 1 and 2; Docs. 82-4, 82-5, Officers' Statements.
[39] Id.
[40] Doc. 82-4 at 3.
[41] Id.

C.O. Reese arrived on the scene and placed handcuffs on Inmate Laprad.[42] He then assisted in controlling Plaintiff.[43] Once C.O. Henry gained control of Plaintiff, he rolled Plaintiff over and placed handcuffs on Plaintiff behind his back.[44]

Neither C.O. Conklin nor Unit Manager Knapp were present or involved in the incident.[45]

At approximately 12:37 p.m., Plaintiff and Inmate Laprad were escorted by C.O. Reese and C.O. Ace to medical to be assessed.[46] Plaintiff was evaluated by Nurse Canner, at approximately 12:44 p.m.[47] A two-centimeter superficial laceration under Plaintiff's right eye and redness to his wrists was noted.[48] No other injuries were observed, and no other complaints were conveyed by Plaintiff.[49] It was also noted that all of Plaintiff's vital signs were normal.[50] Nurse Canner took photographs of Plaintiff's head, chest, legs, back, face, and hands.[51] Following his medical assessment, Plaintiff was cleared for release and returned to his block.[52]

---

[42] Doc. 82-3 at 14.
[43] Id
[44] Doc. 82-4 at 3.
[45] Doc. 82-3, Employee Report of Incident.
[46] Doc. 82-3 at 12, 14.
[47] Doc. 82-3, Medical Incident/Injury Report.
[48] Id.
[49] Id.
[50] Id.
[51] Doc. 82-6 at 2-11, photographs.
[52] Doc. 82-3 at 23.

Shortly thereafter, C.O. Henry issued Plaintiff misconduct no. D574173, charging Plaintiff with fighting, refusing to obey an order, and body punching.[53]

The DOC's inmate grievance procedures are set forth in Administrative Directive 804 ("DC-ADM 804"), titled Inmate Grievance System.[54] DC-ADM 804 provides, with regard to requesting relief in grievances: "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."[55] In accordance with this requirement, the inmate grievance form provides the following instruction: "[t]he inmate shall identify individuals directly involved in the events."[56]

Plaintiff submitted Grievance No. 901243, dated November 20, 2020, regarding the November 15, 2020, incident; he made allegations of abuse against only C.O. Henry.[57] The DOC notified Plaintiff that the grievance would be subject to an extension for an investigation into his allegations.[58] The Bureau of Investigations and Intelligence subsequently conducted an investigation regarding Plaintiff's allegations.[59] On February 21, 2021, following the extension and investigation into Plaintiff's Grievance, the Initial Review Response was issued,

---

[53] Doc. 82-7.
[54] Doc. 82-8, DC-ADM 804.
[55] Id.
[56] Id.
[57] Doc. 82-9, Grievance No. 901243.
[58] Doc. 82-9, Initial Level Extension.
[59] Doc. 82-10, Inmate Abuse Coversheet.

denying the Plaintiff's Grievance because his allegation of abuse was determined to be unsubstantiated.[60]

On March 5, 2021, Plaintiff's appeal to the Facility Manager was denied.[61] On April 9, 2021, Plaintiff's appeal for final review by the Secretary's Office of Inmate Grievances and Appeals was denied.[62] On April 20, 2021, Plaintiff initiated the instant action for damages and injunctive relief.[63]

## III. DISCUSSION

Defendants argue that judgment should be entered in their favor because: (1) Baez has failed to exhaust his administrative remedies against Defendants Conklin and Knapp, by failing to name them in his grievance; (2) even if Baez had properly exhausted, he cannot establish a failure to protect claim or an excessive force claim; and (3) Defendants Conklin and Knap lack personal involvement in any alleged wrongdoing.[64] The Court decides Defendants' motion purely on the merits and do not reach the exhaustion issue.

### A. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.[65] There are several types of Eighth Amendment claims,

---

[60] Doc. 82-9 at 4, Initial Review Response.
[61] Doc. 82-9 at 6, Facility Manager's Appeal Response.
[62] Doc. 82-9 at 8, Final Appeal Decision.
[63] Doc. 1.
[64] Doc. 83 at 2.
[65] *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017).

including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates.[66] An Eighth Amendment claim includes both objective and subjective components.[67] Under the objective prong, a court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."[68] However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue."[69] The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."[70]

### 1. Failure to Protect

To state an Eighth Amendment claim against a prison official for deliberate indifference to inmate health or safety—sometimes referred to as a failure-to-protect claim—the inmate must plausibly plead that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[71] In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant

---

[66] *Id.*
[67] *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[68] *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298).
[69] *Id.*
[70] *Wilson*, 501 U.S. at 298.
[71] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

must actually have known or been aware of the excessive risk to inmate safety."[72] Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[73]

Any claim made by Plaintiff that Defendants failed to protect him when he was attacked by another inmate with a broomstick is completely belied by the video evidence that clearly depicts Plaintiff as the aggressor.[74] The video reveals that, as Inmate Laprad was sweeping the hallway in front of Plaintiff's cell, Plaintiff exited his cell and assaulted Laprad. As such, Defendants cannot be held deliberately indifferent to "an excessive risk" to Plaintiff's safety.

### 2. Excessive Force

In an Eighth Amendment excessive force case, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[75] Not "every malevolent touch by a prison guard" violates the Constitution.[76] "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort

---

[72] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[73] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).
[74] When an opposing party's side of the story is "blatantly contradicted" by clear video evidence on the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *see, e.g., Fennell v. Cambria County Prison*, 607 F. App'x 145, 148 (3d Cir. 2015).
[75] *Hudson*, 503 U.S. at 7.
[76] *Id.* at 9.

'repugnant to the conscience of mankind.'"[77] To establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury.[78] Rather, the central issue is the force used by the officer, not the resultant injury.[79]

When determining whether a prison official has used excessive force, the court must consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.[80]

Here, Plaintiff's claim ultimately fails because there is insufficient evidence for a reasonable fact finder to conclude that the use of force was maliciously and sadistically intended to cause harm to Baez. The undisputed facts and videotape evidence demonstrate that Defendant Henry resorted to force to effect compliance only after Baez attacked and assaulted Inmate Laprad.

For the first and second *Whitley v. Albers* factors, there is undisputed evidence of a need to use force, and a reasonable juror could not find that attempts to secure Baez were unreasonable or excessive. The surveillance video, sans audio,

---

[77] *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).
[78] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).
[79] *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).
[80] *Whitley*, 475 U.S. at 321; *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

commences with Defendant Henry and C.O. Ace monitoring the cleaning of two cells, one of which was Plaintiff's, when Inmate Laprad, who was sweeping the hallway, walks past Plaintiff's cell and Plaintiff emerges and assaults him. When Inmate Laprad attempts to retreat, Plaintiff continues the assault. Defendant Henry and C.O. Ace attempt to break them up, with Defendant Henry physically restraining Plaintiff by wrapping his arms around Plaintiff's waist and physically placing him on the ground. When Plaintiff continues to resist, C.O. Henry uses a chokehold to subdue Plaintiff so that he could be handcuffed and then escorted to the medical unit.

For the third factor, although Baez sustained an injury during the incident, he claims that the laceration under his right eye was inflicted by Inmate Laprad.[81] Other than the injury inflicted by Inmate Laprad, there is no record evidence of any other injury. As to the fourth factor, there was a reasonable threat to the officers' safety, as well as the inmates' safety. The purpose in securing Baez was initially to put an end to the assault with Inmate Laprad and then to gain control over Baez, who became combative, and his subsequent resistance put his own safety, as well as the officers' safety, at risk.

As to the fifth factor, the record reflects that the force ceased when Baez stopped resisting and the officers regained control. Courts must bear in mind that drawing a line as to where force should cease must be approached practically, "

---

[81] Doc. 33 at 3.

'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' making 'allowance for the fact that [ ] officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.' "[82]

Accordingly, the record evidence would lead a reasonable trier of fact to find that Defendant Henry used the amount of force necessary to control Baez under the circumstances.[83] No portion of the record supports an assertion that Defendant Henry acted maliciously or sadistically to cause harm.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.[84] Baez has wholly failed to meet this burden. It is clear on the record that Defendant Henry acted in a good faith effort to restore order and discipline. Defendant Henry is therefore entitled to an entry of summary judgment on Plaintiff's Eighth Amendment failure to protect and excessive force claims.

---

[82] *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).
[83] *Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009); *see also Whitley*, 475 U.S. at 319; *Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) (noting that even a prison officer's "over-reaction" to an inmate-caused disturbance would fall short of supporting a finding of excessive force where the totality of the circumstances indicated that the force was applied in a good faith effort to maintain order).
[84] *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

### B. Claims against Defendants Conklin and Knapp

Lastly, Defendants Knapp and Conklin move for summary judgment based on a lack of personal involvement in the November 15, 2020 incident of which Baez complains.[85] Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*."[86] "A defendant in a civil rights action must have personal involvement in the alleged wrongs.... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[87] Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.[88] Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.[89] A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.[90]

---

[85] Doc. 83 at 7.
[86] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).
[87] *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).
[88] *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.
[89] *Rode*, 845 F.2d at 1208.
[90] *Id.* at 1207.

With respect to Defendants Unit Manager Knapp and C.O. Conklin, the record reflects that neither of these Defendants were present during the November 15, 2020 incident, or otherwise had any involvement in the incident. To the extent that Plaintiff seeks to hold Unit Manager Knapp liable based on his supervisory position,[91] this claim also fails. It is well-established that supervisors may not be held liable for alleged unconstitutional conduct of their subordinates under a theory of *respondeat superior*.[92]

Moreover, Unit Manager Knapp cannot be held liable for alleged "failure to train and supervise,"[93] as such liability is only available in Section 1983 actions where a supervisor "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or "participated in violating plaintiff's rights, directed others to violate them or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinate's violations."[94] The record is devoid of any allegations to support either theory of liability. Based on the record before the Court, I conclude that these Defendants were not personally involved in any wrongdoing whatsoever. Accordingly, Defendants Conklin and Knapp are entitled to an entry of summary judgment.

---

[91] Doc. 33 at 9-10.
[92] *Rode*, 845 F.2d at 1207. ("A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was…a prison supervisor, when the incidents set forth in the complaint occurred.").
[93] Doc. 33 at 9.
[94] *A.M. ex rel. JMK v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge